In the Matter of **PENN CENTRAL TRANSPORTATION COMPANY,** Debtor.

In re Petition of Edward **DOTSON.**

No. 70–347.

United States District Court, E. D. Pennsylvania.

Dec. 21, 1971.

**704**

Blank, Rome, Klaus & Comisky by Goncer M. Krestal, Philadelphia, Pa., and Anthony F. List, Upper Darby, Pa., John B. Lynch, Ivan Shomer, and Lola M. Hale, Philadelphia, Pa., for the trustees, Penn Central Transportation Co.

Houghton, Pappas & Fink, by Thomas A. Fink, Rochester, N. Y., for Edward Dotson, as parent and natural guardian of James Dotson.

Ballard, Spahr, Andrews & Ingersoll by Richardson Blair, Philadelphia, Pa., for Girard Trust Bank and Morgan Guaranty Trust Co.

Fox, Rothschild, O'Brien & Frankel by Nochem S. Winnet, Philadelphia, Pa., for First National City Bank of N. Y.

Tate & Ervin by Spencer Ervin, Jr., Philadelphia, Pa., for Richard Joyce Smith, trustee, New York, New Haven & Hartford Railroad.

### MEMORANDUM AND ORDER NO. 531

FULLAM, District Judge.

Edward Dotson, as parent and natural guardian of James Dotson, a minor, and in his own right, has petitioned for an order directing the Trustees to make immediate payment of a consent judgment entered in a pre-bankruptcy personal injury action against the railroad. The minor suffered the loss of both legs above the knee in 1966, when as a trespasser, he fell or jumped from the top of a freight car and was run over by the train. Suit was instituted in the United States District Court for the Western District of New York in 1968. The case was called for trial in June of 1970, and a settlement of the claim in the amount of $70,000 was then negotiated and agreed to. The consent judgment embodying this agreement was entered after the Debtor went into bankruptcy.

The facts giving rise to the present petition are not essentially in dispute, although conflicting inferences can be urged therefrom. Stated most strongly in favor of the petitioner, the facts can be said to be that, before finally agreeing to the settlement, petitioner and his counsel were advised by representatives of the railroad claim department that, notwithstanding the intervention of bankruptcy, the consent judgment would be paid within six months; in reliance upon these assertions, petitioner and his counsel agreed to the settlement; and further, in reliance upon these assurances, the petitioner undertook to make settlement on the purchase of a rather expensive house, with special features designed to accommodate his disabilities. The judgment has not been paid, and petitioner (who has since married and become a father), is unable to meet his financial obligations.

Stated most strongly in favor of the railroad, the facts can be said to be as follows: The settlement, which is admittedly small when compared with the severity of the minor petitioner's injuries, was entered into in recognition of the fact that the minor had little or no chance of winning his law suit. No assurances of payment were given. If any such assurances were given, they were given in direct violation of instructions issued to all claim department personnel immediately after bankruptcy. Moreover, it would have been entirely unrea-

sonable for petitioner's counsel to rely on any such assurances, he being equally chargeable with knowledge of the effects of the filing of the reorganization petition. And finally, the house was purchased, not in reliance upon the subsequent settlement, but through the use of funds raised by public subscription.

I find it unnecessary to choose among these conflicting inferences. Under either version of the facts, there is simply no justification for granting to this unsecured pre-bankruptcy obligation priority over secured obligations, other unsecured pre-bankruptcy claims, and even some post-bankruptcy obligations having the status of administration claims, some of which remain unpaid (e. g., current taxes, and leased line rentals). At most, the petitioner might be entitled (a) to rescind the settlement, reopen the consent judgment, and proceed to trial of his claim (a course of action which, while not directly within the control of this Court, I would be inclined to direct the Trustees not to oppose), and (b) to oppose any plan of reorganization which does not accord to his claim its appropriate priority when the time comes. It is clear that the present petition must be denied.